UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| TAMMY BURNS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  1:18cv160 |
| | ) | |
| ADAMS COUNTY SHERIFF and | ) | |
| OFFICER MENDOZA, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by the Defendants, Adams County Sheriff and Officer  Mendoza ("Mendoza" or "Deputy Mendoza") on July 13, 2020.  Plaintiff, Tammy Burns ("Burns"), filed a response on September 18, 2020, to which the Defendants replied on October 2, 2020.

Also before the Court is a Motion to Strike, filed by the Defendants on October 2, 2020. Burns responded to the motion on October 16, 2020, to which Defendants replied on October 23, 2020.

For the following reasons, both motions will be granted.

Standard of Review

A court must grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). Material facts are those facts that are outcome-determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). To survive summary judgment, the non-movant must muster specific, admissible evidence permitting a reasonable jury

to find in her favor. *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Although the non-movant receives the benefit of all facts and reasonable inferences, the non-movant cannot rely upon inferences supported by mere speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Self-serving generalizations lacking factual support in the record also cannot preclude the entry of summary judgment. *Taylor v. ADS, Inc.*, No. 00 C 7554, 2002 U.S. Dist. LEXIS 14308, *16-18, and n. 4 (N.D. Ill. Aug. 2, 2002) (citing *Albiero v. City of Kankakee*, 246 F.3d 927, 833 (7th Cir. 2001); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)). What is more, neither legal argument alone, nor opinions not based on observation or first-hand experience, will withstand a motion of summary judgment. *Taylor*, 2002 U.S. Dist. LEXIS 14308, at *18 n. 4.

<u>Discussion</u>

Burns alleges, pursuant to 42 U.S.C. § 1983, that Adams County Sheriff's Deputy Mike Mendoza violated her constitutional rights on or about June 6, 2017 when he removed her from her apartment and began to place her into handcuffs. Burns alleges that the force used by Deputy Mendoza was excessive under the Fourth Amendment. Burns additionally asserts that Deputy Mendoza committed battery under Indiana tort law, for which the Adams County Sheriff is liable under *respondeat superior*. Defendants, however, contend that the force that Deputy Mendoza employed to remove Burns from the apartment and to handcuff her was objectively reasonable. Defendants further contend that Deputy Mendoza is entitled to qualified immunity because he did not violate Burn's clearly-established rights. Because Indiana law incorporates the Fourth Amendment objective-reasonableness standard, Defendants assert that a finding that Deputy Mendoza did not violate Burns' Fourth Amendment rights also bars Burns' state-law battery

2

claim.

Burns asserts the following facts.[1]  In June 2017, Burns was a resident of the Waterbury Apartments in Decatur Indiana, where she lived with her two minor children and her adult daughter Danielle Selking ("Selking"). (Burns Dep., pp. 14, 16,18; Burns Aff., ¶¶ 3-4;  Mendoza Aff., ¶¶5-6,10.)

On the evening of either June 4th or June 6th[2] of that year Burns and Selking called 911 and reported that a man named Eric Davis was walking around the apartment complex hallway with a knife, talking to himself and acting "weird", "like a fool" and "like he is hallucinating". (Burns' Dep, pp. 22, 25-26, 160-166.) They made the 911 call from outside their apartment, then returned, but exited their apartment again once police arrived. (Burns Dep, pp.27-28.) When the two women left this second time, they locked the apartment door, leaving Burn's two minor children, and her minor nephew alone. (Burns Dep, pp.28, 30.)

Police were dispatched to the apartment complex. (Grimm Aff. ¶ 7, Def. Ex. D-1, dispatch record at p.1-2.) Among those that arrived were officers Bessessen and Brooks from the Decatur Police Department, and Defendant Deputy Mendoza from the Adams County Sheriff's Department.  (Mendoza Aff., ¶¶ 7,8,10.) Bessessen and Brooks located Eric Davis at the apartment of Burn's friend and neighbor Mara Davis. (Def. Ex. C-1, Narrative of Officer Bessessen, p.5.) At some point, while Burns and Selking were still outside of their own apartment, one of Burns, other daughters (S.B.) left the apartment, leaving the two younger

---

[1]  For purposes of their motion for summary judgment, Defendants accept Burns' version of the facts.

[2]  Burns disputes the exact date of the incident, which is irrelevant.

children alone inside. (Burns Dep. pp.130-131.) The two younger children then left and went over to Mara Davis' apartment, where they reportedly informed Officer Bessessen and Officer Brooks that a man was on their balcony. (Bessessen Narrative, p.6.) In response, Bessessen and Brooks went to Burns' apartment, and removed the man, Izaiya Newcomber, from Burns' apartment. (Burns Aff., ¶; Bessessen Narrative, p.6.) Officer Bessessen then re-entered Burns' apartment, with Deputy Mendoza following him inside. ( Mendoza Aff., ¶ 10.)

Shortly thereafter, Burns returned to her apartment, because she had heard officers were upstairs, heard yelling, and was worried about her kids. (Burns Dep., pp. 31,112.) She re-entered her residence to discover Deputy Mendoza and Officer Bessessen performing a search. (*Id*., pp. 31,44.) Burns did not know why they were there, even though she was the one that called the police for help, and was concerned that the children were gone from the apartment, even though she was the one that left them alone. (*Id*. p.32.)

Both Deputy Mendoza and Officer Bessessen told Burns to leave. (*Id*. p. 32.) She asked "where are my kids?"; they ignored her question, and Deputy Mendoza responded "I told you to leave", or words to that effect. (*Id*. p. 33.) Burns informed them she needed to know where her children were. (*Id*.) Neither officer gave her any information about her children or nephew.(*Id*.)

Burns remained only briefly in the apartment talking to the two officers, between a few seconds and to a few minutes. (*Id*. p. 35.) At some point, in response to being told to leave, Burns responded "I'm going, don't threaten me". (Burns Dep., p.171). Burns placed her keys on a table, put her hands up, and without walking towards either officer, walked directly to the front door to leave. (Burns Dep.. pp. 34, 75; Burns Aff., ¶ 7.)

While Burns was exiting through the front doorway, Mendoza came up behind her, put his

4

hand in the middle of her back, and pushed her hard out the door, pushing her all the way to the other side of the hall, and shoved her against the wall facing her front doorway.[3] (Burns Dep. pp.35-37; Mendoza Aff. ¶ 21.) The push was forceful and made Burns fall against the wall, where she hit the left side of her head. (Burns Dep. p. 37.) She put her hands against the wall to avoid falling down. (*Id*. p. 101-102.) When Burns made contact with the wall, Mendoza continued to push her against it. (*Id*. p. 37-39.)

Mendoza kept Burns' hands on the wall, and pulled the left hand down, while keeping her left shoulder also on the wall; Mendoza wrenched the arm, hurting Burns. (*Id*. pp. 39, 117-118.) He cuffed her left hand. (*Id*. p. 46.) Selking, who was standing nearby in the hallway, dropped to her knees and pleaded with Mendoza. (Id. p. 47.) Mendoza then uncuffed Burns and had her sit down on the floor with Selking, where the two women cried. (*Id*. p.47.) During all of this, Officer Bessessen had remained inside the apartment and continued the search on his own. (Bessessen Narrative, p.6.)

Burns asserts that at no time inside the apartment, in the apartment doorway, or in the hall, had Burns tried to argue or fight with the officers, struggle with them, or struggle against Mendoza's effort to handcuff her. (Burns Aff., ¶¶ 9, 12.) Burns had been unarmed the whole time. (*Id*., ¶12.) She never threatened the officers, cursed at them, or verbally abused them. (*Id*) The Court again notes that Burns and Selking were the ones that called 911 for help, and thus should not have been surprised or argumentative about officers appearing in their apartment.

---

[3] Defendants dispute that the events occurred as testified to by Burns. Defendants aver that Mendoza did not engage in any physical contact with Burns until after she placed her hand on Mendoza's chest. [ECF 47-2 at paragraph 20]. However, Defendants accept as true, for purposes of this motion, Burns' testimony about the circumstances of the push across the hallway.

Burns was never arrested or charged for anything that took place that night. (Burns Aff., ¶11.) Before leaving the apartment building that night, she permitted Mendoza to search the apartment; nothing illegal was found. (*Id*.) Before Mendoza left, he apologized to Burns. (*Id*.)

In her October 7, 2019 deposition, Burns stated that following her encounter with Deputy Mendoza and his use of force, her left shoulder "hurt me, it hurt me bad, and I was scared at the time because…I was suffering. My left shoulder hurt and …probably never would be the same, and actually is not [the same]". (Burns Dep, p. 115.)  Burns also suffered nightmares from the Mendoza incident for at least six months. (Burns Dep, p. 94.)  Burns went to a doctor about the shoulder pain, and was prescribed medication. (Burns Dep., p.51; Plaintiff's Resp. to Interrog. Nos. 8, 10.) She also made, but did not keep, a mental health appointment for counseling. (Burns Dep, pp. 51, 77, 94.)

In support of their motion for summary judgment, Defendants first argue that Mendoza is entitled to qualified immunity as to Burns' Fourth Amendment excessive force claim. Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability. . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)(emphasis removed). There are two prongs to the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A government official will be protected by qualified immunity if either (1) the official has not violated the plaintiff's constitutional rights or (2) the right at issue was not clearly established at the time of the challenged action. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014). The Court has

discretion to address either prong first if it will be dispositive of the case, *Pearson v. Callahan*, 555 U.S. 223, 236-43 (2009). Defendants assert that the first prong of the analysis should be addressed here because it is dispositive of Burns' state-law battery claim. Defendants further assert that Mendoza is entitled to qualified immunity under both prongs of the analysis.

Defendants contend that the force Mendoza used to push and handcuff Burns was objectively reasonable.[4] A claim that a police officer used excessive force in seizing an individual is "analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and qualify of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

---

[4] Burns initially alleged that Mendoza pointed his gun at her when she entered the apartment, and claimed that that was excessive force.  However, in her response brief, Burns states: "After further review, the Plaintiff will not be proceeding on her excessive force claim regarding Mendoza pointing a gun."  ECF 56 at 14 n.4.

evolving—about the amount of force that is necessary in a particular situation.

*Id*. at 396-97 (citations and some internal quotation marks omitted). Whether the force used was reasonable will depend upon the totality of the circumstances. *Id*. (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Because the "reasonableness" inquiry is an objective one, the officer's underlying intent or motivation is irrelevant. *Id*. at 397.

Defendants argue that the force employed to push Burns across the hall was minimal and not unreasonable. Defendants point out that when Burns and Selking entered the apartment while Officer Bessessen and Deputy Mendoza were searching it, she became subject to the officers' control. Supreme Court precedent has long recognized that police officers are entitled to and do "routinely exercise unquestioned command of the situation" when performing searches, particularly where there may be weapons or armed persons in the areas being searched. *E.g., Michigan v. Summers*, 452 U.S. 692, 702-703 (1981). When Burns and Selking entered the area being searched, Officer Bessessen and Deputy Mendoza had a right to order them out and/or detain them. *E.g., Bailey v. U.S.*, 568 U.S. 186, 195 (2013)(recognizing that Supreme Court precedent "go[es] quite far in allowing seizure and detention of persons to accommodate the necessities of a search," and that, if the occupant of a residence had returned to the residence during the search, "the police could have apprehended and detained him"); *U.S. v. Jennings*, 544 F.3d 815, 818-19 (7th Cir. 2008)(reasonable for officers to briefly detain suspect who entered security perimeter surrounding apartment being searched).

Officer Bessessen and Deputy Mendoza initially elected to order Burns and Selking out of the apartment. Burns, however, instead of exiting as ordered, argued with them. After

8

Burns repeatedly failed to comply with Officer Bessessen's and Deputy Mendoza's lawful orders, Deputy Mendoza decided to detain her, as there existed probable cause for the offense of refusal to aid an officer.  I.C. 35-44.1-3-3.  Mendoza's right to detain Plaintiff included a right to use physical coercion to do so. *E.g., Charles v. City of Chicago*, 2018 WL 318484, *3 (N.D. Ill., Jan. 8, 2018)(citing *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000)).

As noted, the Supreme Court has long recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Defendants argue that the undisputed evidence establishes that Mendoza used a minimal amount of force when he pushed Burns against the wall on the other side of the hallway, where he began to cuff her. Defendants point out that Burns did not hurtle face-first into the wall or fall to the ground upon impact—she caught herself with her hands when she hit the wall. She did not suffer any head injury or loss of consciousness. Rather, Burns reports only temporary pain from hitting the wall. Burns Dep. at 36. When Mendoza had Burns pressed up against the wall, Burns was able to breathe and push against the wall with her arms. Thus, Defendants conclude that the force that Deputy Mendoza used  did not violate Burns' constitutional rights.

Defendants argue that this result is consistent with the Seventh Circuit's opinion in *Cherry v. Washington County*, 526 Fed. Appx. 683 (7th Cir. 2013). In *Cherry*, the plaintiff had not attempted to flee or resist arrest when police officers stopped him on suspicion of burglary. *Id*. at 686. However, he defied an order to look straight ahead and not turn around; one of the officers then pushed him to the ground and pressed his face against the road, causing excruciating pain. *Id*. The district court granted summary judgment in favor of the officers on this claim, and this

9

decision was affirmed on appeal. The Seventh Circuit described the amount of force used as "modest," and as "caus[ing] at most only 'temporary pain and discomfort.'" *Id*. at 687-88. The Court held that "Cherry was under arrest for a serious crime—a home invasion—and in light of his acknowledged defiance of the officers' orders and the momentary nature of the pain and discomfort he claims to have suffered, we agree with the district court that the excessive-force claim fails as a matter of law." *Id*. at 688. Defendants point out that Deputy Mendoza used even less force that the officer-defendant in *Cherry*.

Burns, in response, contends that a jury could find the force used unreasonable because she committed no crime, she did not threaten anyone, and she painfully hit her head on the wall. However, it is clear that, based on Burns' repeated refusals to exit the apartment when ordered to do so, a reasonable officer could have believed that probable cause existed for the offense of refusal to aid a police officer. *See Low v. State*, 580 N.E.2d 737, 740 (Ind. Ct. App. 1991). Even taking the facts as presented by Burns, that she was leaving the apartment at the time Mendoza made contact with her, an officer does not lose the right to arrest someone when they stop violating the law.

Defendants assert that Burns' claim is materially indistinguishable from the excessive force claim at issue in *Sow v. Fortville Police Department*, 636 F.3d 293, 304 (7th Cir. 2011). In *Sow*, the plaintiff was arrested for forgery, and testified that he was "pushed into the police car and hit his head as he was pushed and thrown into the vehicle," causing him to temporarily lose consciousness. *Id.* at 298. The Seventh Circuit, in holding that the officer-defendants were entitled to summary judgment on the Fourth Amendment excessive force claim, held that:

> The push in the case at hand occurred after Plaintiff was arrested based upon probable
> cause to believe that he had committed the crime of forgery. Accordingly, the facts here

10

> are clearly distinguishable from *Baird* [*v. Renbarger*, 576 F.3d 340 (7th Cir. 2008),] and *Clash* [*v. Beatty*, 77 F.3d 1045 (7th Cir. 1996)]. The right to make an arrest necessarily carries with it the right to some degree of physical coercion to effect it. *Graham*, 490 U.S. at 396, 109 S. Ct. 1865. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'" violates the Fourth Amendment. *Id.* at 396, 109 S. Ct. 1865, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). In this case, we conclude that the fact that Plaintiff bumped his head while being placed into the squad car following his arrest is not sufficient to establish a genuine issue of material fact whether excessive force was used in effecting the arrest.

*Sow*, 636 F.3d at 304. Even though Sow had testified that he hit his head so hard that he lost consciousness when he was "pushed and thrown into the vehicle," the Seventh Circuit, as set out above, held that he had no excessive force claim. *Cf. Smith v. Ball State Univ.*, 295 F.3d 763, 766-67, 770-71 (7th Cir. 2002)(force used was objectively reasonable where the plaintiff had apparently refused to exit his vehicle when ordered to; three police officers then dragged him out of the car, one of the officers attempted a knee strike which resulted in tackling the plaintiff to the ground, and the officers held the plaintiff's face to the ground while handcuffing him, resulting in bruising to his face).

The Seventh Circuit's holding in *Sow* is directly applicable to Burns' claim that Mendoza used excessive force when he shoved her towards the wall to handcuff her. The undisputed facts establish that Mendoza used even less force than the officer-defendants in *Sow*. Whereas Sow hit his head so hard that he lost consciousness, Burns did not go hurtling face-first into the wall, did not fall to the ground upon hitting the wall, experienced only momentary discomfort, and did not lose consciousness or suffer any head injury whatsoever. Further, Burns was able to breathe and push against the wall with her arms when  Mendoza had her pressed against the wall to handcuff her. These facts fall far short of creating a genuine issue on reasonableness under *Sow*. Under *Sow*, this is true even if Plaintiff happened to hit her head

when she was placed against the wall to be handcuffed. Burns has never accused Deputy

Mendoza of purposefully slamming her head against the wall.

Burns does not dispute that Deputy Mendoza did not know that the armed and dangerous

person had been located, and does not dispute that Deputy Mendoza believed that he was

assisting in searching the apartment for that person. Clearly, a reasonable officer could certainly

have believed that Burns' presence inside the apartment during a search for an armed and

dangerous person was a danger to both the officers and to Burns. The officers were entitled to

exercise "unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702-703

(2013). When Burns questioned the officers' command, the officers were entitled to use physical

coercion to ensure that Burns did not further interfere with the search. *E.g., Aponte Matos v.

Toledo Davila*, 135 F.3d 182, 191-92 (6th Cir. 1998)(cited approvingly in *Baird v. Renbarger*,

576 F.3d at 343-44).

Burns argues that her "momentary delay in physical compliance with an officers' [*sic*]

order" was no big deal. [ECF #56 at 16]. However, in the 6 seconds it took Burns to finally turn

to leave, if there had been an armed and dangerous person in the apartment, as Deputy Mendoza

believed there could be, the suspect could have used the distraction to attack the officers and/or Burns.

If an armed and dangerous suspect had been hiding in the apartment and took advantage of the

6-seconds-plus distraction created by Burns to attack the officers and/or Burns, people could have

died. This is exactly why the Supreme Court authorizes police officers to exercise unquestioned

command in situations such as these.  *Summers*, 452 U.S. at 702-703.

Accordingly, this court finds that the force Deputy Mendoza used to push Burns across

the hallway and against the wall was objectively reasonable, satisfying the first prong of the

qualified immunity analysis.

Burns has also alleged that Mendoza's act of placing Burns' arm behind her back constituted unreasonable force. Defendants, however, claim that Mendoza's actions were not objectively unreasonable. Police officers are afforded significant leeway when judging the amount of force that is necessary to handcuff someone. Unless a police officer "knowingly use[s] handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury," *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009), the force used to place someone into handcuffs will generally be considered objectively reasonable. Experiencing pain from being handcuffed is insufficient, without more, to create a triable issue about Fourth Amendment reasonableness. *Id*.

Defendants contend that Mendoza "did not use handcuffs in a manner that would clearly injure or harm a typical arrestee," *id*. at 773. It would not clearly injure or harm a typical arrestee to pull the arrestee's arm down and behind their back in order to cuff them, which is in most cases necessary in order to handcuff someone. Defendants argue that even if an officer pulls a suspect's arm down quickly, this would not clearly injure someone. Nor could the simple act of pulling someone's arm down quickly be considered objectively unreasonable without greatly expanding the scope of liability for police officers. Defendants point out that Burns had repeatedly defied Deputy Mendoza's and Officer Bessessen's orders to exit the apartment, so Deputy Mendoza had every reason to believe that Burns may attempt to resist his efforts to physically control her and place her into handcuffs.

Defendants contend that this case is a far cry from other cases in which there was a triable issue found concerning the reasonableness of force used in handcuffing someone. In *Payne v.*

13

*Pauley*, the record established that officers fought over the plaintiff's arm for 30 minutes, forcing her arm behind her back, twisting her arm, and over-tightening the handcuffs, even though she was not a threat to anyone and was not resisting or attempting to flee. 337 F.3d 767, 779 (7th Cir. 2003). In *Rooni v. Biser*, "[w]hile in the process of handcuffing Rooni, Biser grabbed Rooni by the back of the neck and jerked him back, almost pulling Rooni over," he ignored Rooni's repeated complaints of pain, and "purposefully twisted the handcuffs so that they would hurt [Rooni]." 742 F.3d 737, 739 (7th Cir. 2014). In *Ramusack v. Swanson*, the defendant-officers forced the plaintiff's arms up behind her back while she was handcuffed and "almost lifted" her by her handcuffed arms as they dragged her to the squad car. 2005 WL 3359114, *3 (N.D. Ind., Dec. 9, 2005). There are no such accusations in this case, where Deputy Mendoza did not even cuff both of Burns' hands before he released her.

The holding in *Payne v. Pauley* demonstrates that Deputy Mendoza did not use objectively unreasonable force in pulling Burns' arm behind her back to apply the handcuff. Here, it is undisputed that Burns repeatedly refused to comply with orders to exit the apartment, and it is undisputed that the force Deputy Mendoza used to cuff Burns' left arm was far less than the force used in *Payne*. Thus, Deputy Mendoza was entitled to significant leeway in judging the amount of force employed to handcuff Plaintiff, and the force he used was not objectively unreasonable.

Burns, however, argues that there is a genuine dispute of material fact concerning her claim that Deputy Mendoza used too much force to pull her arm behind her back because Deputy Mendoza pulled down strongly and because Burns claims to have continuing pain in her left

shoulder.[5] However, Burns presents no facts whatsoever from which a jury could find that Deputy Mendoza used excessive force under the legal standards applicable to this claim. Burns does not dispute the relevant legal standards applicable to handcuffing claims. As discussed above, police officers are afforded significant leeway when judging the amount of force that is necessary to handcuff someone. Unless a police officer "knowingly use[s] handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury," *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009), the force used to place someone into handcuffs will generally be considered objectively reasonable. Experiencing pain from being handcuffed is insufficient, without more, to create a triable issue about Fourth Amendment reasonableness. *Id*. In the usual case, if the officer "did not use handcuffs in a manner that would clearly injure or harm a typical arrestee," *id*. at 773, there can be no liability for the officer.

Clearly, Defendants are entitled to summary judgment on this aspect of Burns' excessive force claim because Burns has failed to present any evidence that Mendoza did anything other than pull her arm down and put it behind her back to handcuff her. Burns does not accuse

---

[5]Defendants have moved to strike certain evidence and argument from Burns' response to Defendants' Motion for Summary Judgment.  Specifically, Defendants move to strike evidence and argument that Burns attributes her ongoing left shoulder pain to Mendoza's actions. Defendants point out that there are multiple potential etiologies for Burns' pain, as medical records show that Burns has sought repeated treatment for pain in her left shoulder due to her work as a waitress, and also due to a car accident.  It is clear that because there are multiple potential etiologies for Burns' shoulder pain, expert testimony is necessary to establish causation and lay a foundation for Burns to testify about her continuing left shoulder pain.  *Haack v. Bongiorno*, 2011 WL 862239, *4 (N.D. Ill., Mar 4. 2011)("No lay witness, however, is permitted to opine that an accident proximately caused Plaintiff's physical health problems or to offer a detailed medical diagnosis (or self-diagnosis) of Plaintiff's alleged injuries."); *see also Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009)(holding that, if the plaintiff had claimed tht the defendant's actions "exacerbated his back problems, we might require Hendrickson to support his theory with some objective medical evidence," but that '[t]his case presents no such complicated question of medical causation.").  Thus, the motion to strike will be granted.

Mendoza of doing anything that would clearly injure a typical arrestee, which is the standard that Burns must meet. Burns does not accuse him of pulling her arm behind her back and then up into an unnatural and obviously painful position. Burns does not accuse him of dragging her out of the building by her handcuffed wrists. He is not accused of pulling Burns' handcuffed arms up behind her back in a manner that would obviously inflict pain. He is not accused of tightening the handcuff so tight that it would obviously inflict pain. Unless the action of the officer will clearly inflict pain or injury on a typical arrestee, there is no violation of the Fourth Amendment. It would not clearly injure a typical arrestee to pull their arm down and behind their back, even if the officer pulled the arrestee's arm down hard. A reasonable officer, in the exigencies of the undisputed facts of this case, could have believed that they needed to get Burns handcuffed as quickly as possible in case the other officer, who was believed to be still searching for a dangerous person with a knife, encountered violent resistance. A contrary finding would cause police officers to be timid in uncertain circumstances out of fear of personal civil liability if they pulled someone's arm down "too hard" to cuff them, contrary to the purposes of qualified immunity. Accordingly, this court holds that Defendants are entitled to summary judgment as to this aspect of Burns' excessive force claim.

With regard to the second prong of the qualified immunity analysis, Defendants assert that it was not clearly established that the force that Mendoza used would be objectively unreasonable. The Supreme Court set out in *District of Columbia v. Wesby* the proper analysis for determining whether a right was "clearly established" under the second prong of the qualified immunity analysis:

"Clearly established" means that, at the time of the officer's conduct, the law was

16

sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established. In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which the particular officer was confronted constituted probable cause.

We have stressed that the specificity of the rule is especially important in the Fourth Amendment context. Probable cause turns on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules. It is incapable of precise definition or quantification into percentages. Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered. Thus, we have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate. Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. But a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause.

*Wesby*, 138 S. Ct. 577, 589-90 (2018)(citations, alterations, and some internal quotation marks

omitted). If "a reasonable officer, looking at the entire legal landscape at the time of the

[challenged action], could have interpreted the law as permitting" it, then the officer-defendant is entitled to summary judgment based upon qualified immunity. *Id*. It is Burns' burden to demonstrate that the right at issue was clearly established. *Perry v. Sheahan*, 222 F.3d 309, 315 (7th Cir. 2000). Defendants argue that Burns cannot meet this burden as it cannot be said that it must have been clear to a reasonable officer in Mendoza's position that any of the force employed against Burns would violate Burns' constitutional rights.

Defendants maintain that it was not clearly established that the force that Deputy Mendoza employed in pushing Burns across the hall would violate Burns constitutional rights. As discussed above, Deputy Mendoza had a right to detain Burns when she entered the apartment, and when she refused repeated commands to exit the apartment he had the right to use physical coercion to detain her.

Defendants also maintain that it was not clearly established that the minimal force that Deputy Mendoza used when he pulled Burns' left arm behind her back would violate Burns' constitutional rights. As discussed above, police officers are afforded wide latitude in judging the amount of force necessary to place someone into handcuffs, and Deputy Mendoza did nothing that would obviously injure a typical arrestee.

In response, Burns cites *Morfin v. City of Chicago* in an attempt to defeat qualified immunity. In *Morfin*, the undisputed evidence established that the plaintiff was "docile and cooperative." 349 F.3d 989, 1005 (7th Cir. 2003). There were no issues of officer or public safety involved in *Morfin*. The officer was investigating tampering with voting machines, and the plaintiff was not a suspect. *Id*. at 992-93 & n.1. That is in stark contrast to this case, where Burns admittedly refused to comply with the officers' repeated orders to exit the apartment where

18

Mendoza believed that an armed and dangerous suspect may have been hiding. *Morfin* also involved greater force than this case. In *Morfin*, two officers "grabbed him, twisted his arm, shoved him toward the wall and took him to the floor." *Id*. at 1005. Plaintiff does not accuse Deputy Mendoza of twisting her arm or tackling her, as in *Morfin*. "[S]pecificity is especially important in the Fourth Amendment context," *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015), and the necessary specificity of the facts in *Morfin* to this case is lacking. A reasonable officer in Deputy Mendoza's position would not consider *Morfin* to "squarely govern," *id*. at 309, the specific facts of this case, where Burns repeatedly refused lawful orders, which created a risk to the safety of the officers and to Burns herself.  Thus, *Morfin* does not defeat qualified immunity. The Seventh Circuit's opinion in *Sow v. Fortville Police Department* is far more analogous to the facts of this case, and under *Sow* a reasonable officer could have considered that the amount of force used to secure Burns was objectively reasonable.

*Chelios v. Heavener*, also cited by Burns in an effort to defeat qualified immunity, is even less like the facts of this case. There, even though the plaintiff, Chelios, had not committed any crime or presented any sort of threat to the officers or others, "Sergeant Heavener immediately put his arms around Mr. Chelios' neck, grabbed his shoulders, spun Mr. Chelios around and then two other officers and Sergeant Heavener tackled Mr. Chelios." 520 F.3d 678, 689 (7th Cir. 2008). The court held that "a jury could certainly find that his conduct in no way warranted being tackled by three officers." *Id*. at 690.  In the present case,  Burns was not tackled. Rather, she was placed up against a wall. Although she claims that Mendoza was less than gentle, the undisputed facts show that she was subjected to far less force than Chelios. Additionally, as discussed above, the Seventh Circuit distinguished, in *Sow v. Fortville Police Department*, the legal principles

19

expressed in *Chelios* in circumstances where, as here, probable cause existed to arrest the plaintiff. A reasonable officer in Deputy Mendoza's position would not consider Chelios to "squarely govern" the circumstances that confronted him. Again, the facts of *Sow v. Fortville Police Department* are far more analogous to this case.

Plaintiff relies on *Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018), in an effort to defeat qualified immunity, but that case cannot be considered here because it was issued subsequent to the events of this lawsuit. Opinions issued after the events of this case "could not have given fair notice to [Deputy Mendoza] and are of no use in the clearly established inquiry." *Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004). Further, *Strand* is far afield from the facts of this case. Strand involved the use of deadly force following an assault on the officer and the suspect's apparent surrender. *Id*. at 912. The sole issue in that appeal was "whether the rapidly-evolving nature of the altercation justified Officer Minchuk's use of force, or whether he had time to recalibrate the degree of force necessary, in light of the plaintiff's statement of surrender." *Id*. at 913. Clearly, the case at bar does not involve the use of deadly force or "recalibration" of an officer's response to violent resistance. Burns did not assault Mendoza, so, in addition to the fact that it was issued after these events, *Strand* has no bearing on clearly-established law because that opinion has no similarity whatsoever to the particular facts of this case.

Plaintiff presents *Mitchell v. Village of Matteson*, 2020 WL 3035965 (N.D. Ill., June 5, 2020), in an effort to defeat qualified immunity. Like *Strand*, the *Mitchell* decision is inapplicable to the clearly-established prong of qualified immunity because it was issued subsequent to the events of this case. More fundamentally, however, *Mitchell* is inapposite because it is a district court opinion. District court opinions cannot create clearly-established law. *Camreta v. Greene*,

563 U.S. 692, 709 n.7 (2011)("[D]istrict court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity."). Recently, the Supreme Court has questioned whether even circuit court opinions can create clearly-established law. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019)("Assuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity. . . ."). The facts of the *Mitchell* decision, in which the plaintiff alleged that he was assaulted by three police officers when he was calmly answering their questions and had presented no threat to anyone, are also dissimilar. Here, Burns had repeatedly refused to comply with the officers' commands, which Mendoza reasonably believed created a danger to both Burns and the officers, and he used far less force than the three officer-defendants in *Mitchell*.

*Sow v. Fortville Police Department* remains the most closely-analogous case. Also closely analogous is *Smith v. Ball State*, which involved an apparent refusal to comply with a police officer's orders. *Smith*, 295 F.3d at 766-67, 770-71. Like in *Sow*, the officer-defendants in *Smith* used more force than Burns accuses Mendoza of using. A reasonable officer could have interpreted *Smith* as allowing the level of force that Mendoza used in this case, and Mendoza is therefore entitled to qualified immunity under the clearly-established-law prong of qualified immunity.

Finally, Burns presents no precedent involving handcuffing, and thus fails to satisfy her burden to demonstrate that Mendoza violated clearly-established law when he pulled her arm behind her back to cuff her.

Burns has failed to satisfy her burden to demonstrate that Mendoza violated her

21

clearly-established rights. Burns presented no factually-similar precedent that would have put

Mendoza on notice that his actions would violate the Fourth Amendment. The precedents that

Burns cited were issued after the events of this case, were issued by a district court, or have no

similarity to the facts of this case. None of the precedents presented by Burns would "squarely

govern" the particular circumstances that confronted Mendoza. Nor is this the rare case of

"obvious" unconstitutional conduct to which the Supreme Court has referred. When viewing the

"entire legal landscape" at the time of these events, *District of Columbia v. Wesby*, 138 S. Ct.

577, 589-90 (2018), in particular the Seventh Circuit's factually-similar opinions in *Sow v.

Fortville Police Department* and *Smith v. Ball State*, a reasonable officer could have believed that

the minimal force employed by Mendoza would be lawful. Therefore, Mendoza is entitled to

summary judgment based upon the clearly-established prong of the qualified immunity analysis.

Next, Defendants argue that this Court should grant summary judgment on Burns' state

law battery claim.  Burns asserts a state-law *respondeat superior* battery claim against the Adams

County Sheriff based upon the same alleged acts of excessive force pled against Mendoza.

Burns' state-law battery claim fails because, as this Court held above, Mendoza did not use

unreasonable force.

This Court's jurisdiction over Burns' state-law battery claim is premised upon 28 U.S.C. §

1367(a), which grants district courts supplemental jurisdiction over state-law claims that form the

same Article III case or controversy as the claims over which the district court has original

jurisdiction. This section provides that "[a] district court may relinquish jurisdiction over a

[supplemental state-law claim] if . . . the district court has dismissed all claims over which it has

original jurisdiction." 28 U.S.C. § 1367(c). This subsection also applies where a district court has

granted summary judgment on all federal claims. *See, e.g., Hansen v. Bd. of Tr. of Hamilton S.E. Sch. Corp.,* 551 F.3d 599, 608 (7th Cir. 2008). Rather than automatically losing jurisdiction over supplemental state-law claims, the statute grants district courts broad discretion in determining whether to retain or relinquish jurisdiction over supplemental claims. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). In deciding whether to retain jurisdiction over a supplemental claim, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Hansen*, 551 F.3d at 608.

A "district court may [retain supplemental jurisdiction and] decide the merits of a state law claim if the claim does not present any 'novel or unsettled' questions of state law, or the appropriate disposition of the claim is 'crystal clear,' and it is 'otherwise efficient to do so.'" *Franklin v. Manek*, 2004 WL 1629544, *11 (S.D. Ind., June 8, 2004)(citations omitted)(citing *Binz v. Brandt Constr. Co.*, 301 F.3d 529, 532 (7th Cir. 2002); *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001)). "'If . . . an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case.'" *Id*. (ellipsis in original)(quoting *Van Harken*, 103 F.3d at 1354).

In *Tom v. Voida*, 1991 WL 343377 (S.D. Ind., May 3, 1991), the District Court for the Southern District of Indiana granted summary judgment to the defendants on the plaintiff's Section 1983 deadly force claim due to the absence of a constitutional violation. *Tom*, 1991 WL 343377, *8. After granting summary judgment, the court relinquished jurisdiction over the plaintiff's state-law wrongful death, assault, and battery claims. *Tom*, 1991 WL 343377, *7.

23

Later, the state-law claims were re-filed in Indiana state court. *See Tom v. Voida*, 654 N.E.2d 776, 780 (Ind. Ct. App. 1995). The trial court granted the defendants' motion for summary judgment and the plaintiff appealed. *Tom*, 654 N.E.2d at 781. The Court of Appeals held that the defendants were entitled to assert collateral estoppel on the basis of the federal court's summary judgment on the Section 1983 claims. *Id*. at 785.

In Indiana, collateral estoppel "'bars relitigation of a fact or issue where that fact or issue was necessarily adjudicated in an earlier suit and that fact or issue is presented in the subsequent lawsuit.'" *Id*. at 781 (quoting *Ind. Dept. of Envtl. Mgmt. v. Conard*, 614 N.E.2d 916, 923 (Ind. 1993)). In the collateral estoppel analysis, "'the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.'" *Id*. (quoting *Sullivan v. Am. Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 138 (Ind. 1992)). In *Tom*, the Indiana Court of Appeals held that the reasonableness of the officer's use of force was necessarily resolved against the plaintiff in the federal lawsuit, that the plaintiff had a fair opportunity to litigate the issue, and that there were no special circumstances which would render collateral estoppel unfair. *Id*. at 783-85. Because the federal court's determination on the reasonableness of deadly force estopped relitigation of the issue, there were no genuine disputes of material fact and the defendants were entitled to summary judgment. *Id*. at 785.

The result is the same here. Indiana's use-of-force standards mirror *Graham v. Connor*, *see* IC 35-41-3-3(b) and *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000), so the lawfulness of the use of force under state law will necessarily be resolved by a finding on summary judgment that the force used by Mendoza was reasonable. Burns has had a

24

full and fair opportunity to litigate the issue in this Court and there are no special circumstances in this case that would make it unfair to apply collateral estoppel. Clearly, the finding by this Court that deadly force was reasonable for the purposes of Burns' Section 1983 claim will be afforded collateral estoppel effect if the state-law battery claim is re-filed in state court.

Plaintiff argues, without citation to any authority whatsoever, that the Court should not grant summary judgment on her state-law battery claim if the Court finds that Deputy Mendoza's actions were objectively reasonable under the Fourth Amendment. Plaintiff, however, agrees that the Indiana standard for police officers' use of force mirrors the Fourth Amendment standard. Thus, it is clear that it is appropriate to grant summary judgment on Burns' state-law battery claim against the Sheriff because, as the Indiana courts have recognized, a finding against Burns on the objective reasonableness of the force used is dispositive of Burns' state-law battery claim. Accordingly, summary judgment will be granted in favor of Defendant Adams County Sheriff, as well as in favor of Defendant Deputy Mendoza, on all of Burns' claims.

<u>Conclusion</u>

On the basis of the foregoing, Defendants' Motion for Summary Judgment [DE 46, 59] and Defendants Motion to Strike [DE 57] are both hereby GRANTED.


 Entered: December 2, 2020.


                                        s/ William C.  Lee____
                                        William C. Lee, Judge
                                        United States District Court

25